[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
DECEMBER 15, 2006
THOMAS K. KAHN
CLERK

No. 06-12254
Non-Argument Calendar
_____

D. C. Docket No. 05-00275-CR-CB

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

LONNIE RAY HODNETT,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Alabama

_____

**(December 15, 2006)**

Before ANDERSON, BARKETT and HULL, Circuit Judges.

PER CURIAM:

Lonnie Ray Hodnett appeals his 360-month sentence imposed after he pled

guilty to child pornography charges. On appeal, Hodnett (1) argues that his sentence is unreasonable; and (2) requests that we construe one of the conditions of his supervised release to avoid a potential Fifth Amendment violation. After review, we affirm.

## I. BACKGROUND

In June 2005, Kenneth Ray Johnson was arrested in Missouri on state charges based on his involvement in the production and distribution of child pornography. Johnson later advised FBI agents that he had met Defendant Hodnett in a sexual chat room that catered to preteens, and that he had traveled to Hodnett's residence on five or six occasions and would bring his minor children with him. On one occasion in October 2004, Johnson visited Defendant Hodnett and allowed Hodnett to engage in oral sex with Johnson's six-year-old daughter. Johnson also admitted that he had sent Hodnett child pornography over the internet, and that Hodnett had sent him some images of child pornography as well.

In October 2005, FBI agents executed a search warrant on Defendant Hodnett's residence. A forensic examination of Hodnett's computer revealed more than 600 images of child pornography, as defined in 18 U.S.C. § 2256(8)(A), including images of prepubescent children engaged in sexual activity. Hodnett told an FBI agent that he had thoughts and urges about having sex with kids, and

2

that he seeks out child pornography on the internet. Hodnett admitted to engaging in oral sex with Johnson's daughter and told the FBI agent that he had a pair of her panties in his dresser drawer. The child's panties were located along with training bras and other panties which Hodnett stated belonged to his girlfriend's children. Hodnett also admitted that (1) in 1969, while serving in Vietnam, he kidnaped and forcibly raped a six-year-old Vietnamese girl; and (2) in the 1970's, he sexually molested the young children of his first wife.

Hodnett was charged with (1) receipt and distribution of child pornography, in violation of 18 U.S.C. § 2252A(a)(2) and (b)(1) ("Count One"); and (2) possession and attempted possession of child pornography, in violation of 18 U.S.C. §§ 2252A(a)(5)(B), 2, and 2256(8)(A) ("Count Two"). Hodnett pled guilty to the charges without a plea agreement.

A presentence investigation report ("PSI") recommended a total offense level of 42[1] and a criminal history category of I, resulting in an advisory

---

[1]Hodnett's base offense level of 22 was increased by: (a) 2 levels under U.S.S.G. § 2G2.2(b)(2) because his offense involved a minor who was not yet 12 years old; (b) 5 levels under § 2G2.2(b)(3)(B) because his offense involved distribution in exchange for a thing of value although not for pecuniary gain; (c) 4 levels under § 2G2.2(b)(4) because the material included sadistic or masochistic conduct, or other depictions of violence; (d) 5 levels under § 2G2.2(b)(5) because he engaged in a pattern of activity involving sexual abuse or exploitation of a minor; (e) 2 levels under § 2G2.2(b)(6) because his offense involved the use of a computer; and (f) 5 levels under § 2G2.2(b)(7)(D) because his offense involved more than 600 images. Hodnett's offense level was then reduced 3 levels under U.S.S.G. § 3E1.1 for acceptance of responsibility, resulting in a total offense level of 42.

3

Guidelines range of 360 months to life imprisonment. However, because the statutory maximum for Count One is 20 years, and the statutory maximum for Count Two is 10 years, Hodnett's maximum statutory sentence was 30 years or 360 months. See 18 U.S.C. § 2252A(b)(1)-(2). Therefore, the advisory Guidelines range became the statutory maximum of 360 months. See U.S.S.G. § 5G1.2(d). Hodnett did not raise any objections to the PSI, and the district court adopted the calculations.

At sentencing, Dr. Barry T. Hirsch, a forensic psychologist, testified on behalf of Hodnett. Dr. Hirsch testified that Hodnett had an extremely chaotic home life with a brutal, hypersexual father who battered Hodnett, his half sister, and his mother. Hodnett witnessed his parents engage in sexual activity, and he also witnessed his father sexually molest his half sister from the age of about six or seven on. Hodnett also had engaged in sexual intercourse with his half sister when they were young, and his sexual fantasies continued to center around prepubescent girls even as he grew older. Dr. Hirsch recommended that Hodnett be (1) supervised for the remainder of his life; (2) prescribed antidepressants, not only because he was clinically depressed, but because the medication would lower his sex drive; (3) subjected to random drug tests to dissuade him from taking Viagra or related medications; and (4) subjected to Global Positioning System monitoring.

4

Although Dr. Hirsch stated that Hodnett is "a hardcore, pedophilic, sadistically oriented individual who is appropriate for removal from society for a period of time to protect society," he nevertheless opined that Hodnett was "highly treatable." Accordingly, Dr. Hirsch maintained that while keeping Hodnett in prison for thirty years would prevent him from accessing children during that time, (1) only mental health treatment combined with medication and monitoring would rehabilitate him; (2) he would be less likely to accept treatment at the end of thirty years in prison than he was now; and (3) if he did not receive treatment, he most likely would emerge from prison even more dangerous because he could learn from other pedophiles while in prison.

At sentencing, Hodnett's step-daughters Renee Hollis and Vicky Lynn Coker testified on behalf of the government. Both women testified that Hodnett molested them in the 1970's when they were children, while Hodnett was married to their mother. Coker also testified that Hodnett had sexual intercourse with her as part of the molestation.

At sentencing, the government argued that Hodnett should be sentenced to the statutory maximum of 30 years' imprisonment, commenting that Hodnett was "a poster child for deviant sadomasochistic behavior with children," and that "at least for 30 years we can tell this community that it will be safe from him."

Hodnett admitted that the safety of the community was an important consideration, but argued that his sentence should focus on treatment and rehabilitation, rather than merely the length of the sentence. Hodnett left it up to the district court to determine the appropriate length of his sentence, but argued that a twelve-year sentence, served in a mental health institution where he could get treatment, would be appropriate.

The district court sentenced Hodnett to the statutory maximum of 240 months as to Count One and 120 months as to Count Two, to be served consecutively for a total of 360 months' imprisonment. Although the district court stated that it felt compassion for the circumstances surrounding Hodnett's early life, the court determined that it must sentence him to the longest possible term in order to protect society and to punish him. Specifically, the court stated, "Mr. Hodnett, I wish this pen were a magic wand, I would wave it and I would set you back . . . and have you come up in some other family and some other circumstance." However, the court continued,

> as a judge, my obligation is to protect—to do a number of things, to punish, to deter and to protect the public. Dr. Hirsch is a brilliant man. And your lawyer has done an excellent job in retaining him.
>
> And what he had to say was interesting, but it just didn't measure up to what I needed to hear to tell me that there was enough of a guarantee or assurance that if I sentence you to 12-years or 15-years or 20, that the treatment that you might or might not

6

participate in at Buckner for the sexual offender program, you might be a terrible—you might not even go to it.

. . . . And there are too many risks, Mr. Hodnett. Society demands more.

Accordingly, the district court sentenced Hodnett to a total of 360 months' imprisonment, stating that "that is the only sentence . . . that serves the sentencing objectives of punishment, deterrence and incapacitation."

The district court also sentenced Hodnett to a life term of supervised release. Among the conditions of supervised release, the district court ordered that Hodnett "participate in the mental health sex offender treatment, evaluation, testing, clinical, polygraph and other assessment instruments as directed by the court through the probation office." Hodnett objected to this condition of supervised release, and in particular, the portion requiring him to submit to polygraph examinations, as a potential violation of his Fifth and Sixth Amendment rights.

Hodnett now appeals.

## II. DISCUSSION

### A. Reasonableness of Sentence

On appeal, Hodnett argues that his 360-month sentence is unreasonable, claiming that the sentence is longer than necessary to achieve the purposes of sentencing.

After United States v. Booker, 543 U.S. 220, 125 S. Ct. 738 (2005), a district court, in determining a reasonable sentence, must correctly calculate the sentencing range under the Guidelines and then consider the factors set forth in 18 U.S.C. § 3553(a).  See United States v. Talley, 431 F.3d 784, 786 (11th Cir. 2005).[2]

We review a defendant's ultimate sentence for reasonableness in light of the § 3553(a) factors.  See United States v. Winingear, 422 F.3d 1241, 1246 (11th Cir. 2005).  This "[r]eview for reasonableness is deferential. . . . and when the district court imposes a sentence within the advisory Guidelines range, we ordinarily will expect that choice to be a reasonable one."  Talley, 431 F.3d at 788.  "[T]he party who challenges the sentence bears the burden of establishing that the sentence is unreasonable in the light of both [the] record and the factors in section 3553(a)."  Id.  The fact that Hodnett received the statutory maximum term of imprisonment for his convictions does not necessarily make the sentence unreasonable.  See United States v. Johnson, 451 F.3d 1239, 1244 (11th Cir. 2006) (upholding as

---

[2]"The factors in § 3553(a) include: (1) the nature and circumstances of the offense; (2) the history and characteristics of the defendant; (3) the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment; (4) the need to protect the public; and (5) the Guidelines range." United States v. Scott, 426 F.3d 1324, 1328-29 (11th Cir. 2005) (citing 18 U.S.C. § 3553(a)).  "[N]othing in Booker or elsewhere requires the district court to state on the record that it has explicitly considered each of the § 3553(a) factors or to discuss each of the § 3553(a) factors." Id. at 1329. Instead, indications in the record that the district court considered facts and circumstances falling within § 3553(a)'s factors will suffice. Id. at 1329-30; Talley, 431 F.3d at 786.

reasonable a statutory maximum sentence of 140 years' imprisonment for producing and distributing child pornography).

After review, we conclude that Hodnett has not shown that his 360-month sentence is unreasonable. The district court correctly calculated the advisory Guidelines range and indicated that it had considered several of the § 3553(a) factors, including (1) the history and characteristics of the defendant, 18 U.S.C. § 3553(a)(1); (2) the need for the sentence to provide just punishment for the offense, afford adequate deterrence, and protect the public from further crimes of the defendant, id. § 3553(a)(2)(A)-(C); and (3) the advisory Guidelines term of imprisonment, id. § 3553(a)(4). The district court also considered the need to provide Hodnett with appropriate mental health treatment, id. § 3553(a)(2)(D), but ultimately concluded that the risk of Hodnett not being successfully rehabilitated was too great to justify a lower sentence when compared with the need to protect the public. Accordingly, we cannot say that the district court's sentence is unreasonable.

## B. Conditions of Supervised Release

Hodnett argues that the condition of his supervised release requiring him to submit to polygraph testing may violate his Fifth Amendment privilege against self-incrimination. Therefore, Hodnett requests that we construe this condition of

9

supervised release to provide that his supervised release cannot be revoked if he refuses to submit to the polygraph testing based on a valid assertion of his Fifth Amendment rights.

This Court has held that where a defendant challenges a condition of supervised release requiring polygraph testing on Fifth Amendment grounds when no incriminating questions have been asked and the privilege has not been invoked, an individualized Fifth Amendment claim is not ripe for review. See United States v. Taylor, 338 F.3d 1280, 1284 (11th Cir. 2003); United States v. Zinn, 321 F.3d 1084, 1091-92 (11th Cir. 2003).

In this case, Hodnett's concerns about a potential Fifth Amendment violation present only speculation about future contingent events, and therefore, his claim is not ripe for review.[3] Taylor, 338 F.3d at 1284. Hodnett's term of supervised release has not started, he has not been asked any potentially incriminating questions, and he has not invoked the Fifth Amendment privilege against self-incrimination. As such, we need not construe the condition of supervised release to avoid any potential Fifth Amendment issues.

---

[3]Although we can decide whether requiring polygraph testing as a condition of supervised release generally violates the Fifth Amendment, this Court already has rejected this argument and we do not discuss it further. See Taylor, 338 F.3d at 1284.

10

### III. CONCLUSION

Based on the foregoing reasons, we affirm Hodnett's 360-month sentence and term of supervised release.

**AFFIRMED.**